521 So.2d 143 (1988)
Troy BROWN, et al., Appellants/Cross Appellees,
v.
NORTH BROWARD HOSPITAL DISTRICT d/b/a Broward General Medical Center, et al., Appellees/Cross Appellants.
Troy BROWN, et al., Appellants,
v.
NORTH BROWARD HOSPITAL DISTRICT, et al., Appellees.
NORTH BROWARD HOSPITAL DISTRICT d/b/a Broward General Medical Center, Appellant,
v.
Troy BROWN, William E. Goellner, M.D., Etc., et al., Appellees.
Nos. 85-979, 85-1047 and 85-2219.
District Court of Appeal of Florida, Fourth District.
January 20, 1988.
Rehearings Denied February 17 and March 24, 1988.
*144 Richard A. Sherman of Law Offices of Richard A. Sherman, P.A., and Ferrero, Middlebrooks, Strickland & Fischer, P.A., Fort Lauderdale, for Troy Brown, et al.
Steven R. Berger of Steven R. Berger, P.A., Miami, Gibbs & Zei, P.A., and Bernard & Mauro, Fort Lauderdale, for North Broward Hosp. Dist.
John Edward Herndon, Jr., of Thornton, Herndon & Mastrucci, Miami, for William E. Goellner, M.D.
Shelley H. Leinicke of Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane, Fort Lauderdale, for Haeck, Findeiss, Westmark & Creed, M.D., P.A.
DOWNEY, Judge.
These three consolidated appeals arise from a final judgment and orders on post-trial motions in this medical malpractice case involving the paralysis of appellant, Troy Brown. We affirm the trial court's judgment and orders in all respects.
On June 3, 1980, at around 7:00 p.m., the accident giving rise to the cause of action herein occurred when Troy Brown, a five-year-old boy, was skate-boarding down the street on his stomach, slid under a slowly moving car and was pinned under the exhaust pipe for several minutes until the driver jacked up the car and Troy's stepfather removed him from underneath the car. Troy's mother and stepfather subsequently drove him to Imperial Point Hospital at about 8:00 p.m. where he was treated in the emergency room by a Dr. Goldman who suspected possible intra-abdominal injuries. At Dr. Goldman's suggestion, Troy was transferred to Broward General Medical Center at around 10:00 p.m.
At Broward General, Troy was treated by Dr. Goellner, the emergency room physician on duty at the time, who had earlier spoken with Dr. Goldman regarding the suspected injuries. After five hours of observation and examination, Dr. Goellner concluded that Troy had only minor injuries and authorized his release from the hospital at 3:35 a.m. When Troy awoke the next day at home, he was unable to get out of bed and could not move his legs.
Troy Brown, by and through his mother, Patricia Ware, and Patricia Ware, individually, filed suit against Dr. Goellner and his employer, Haeck, Findeiss, Westmark and Creed, M.D., P.A., and North Broward Hospital District d/b/a Broward General Medical Center, among others. The main issue at trial was whether Dr. Goellner and the emergency room staff were negligent in their treatment of Troy by not discovering his spinal injury and resulting paralysis. In contrast to the trial testimony of Troy's mother that, while in the emergency room, she told Dr. Goellner twice that Troy could not move his leg and received no response from him, Dr. Goellner testified that he was never given this information and that *145 if he had been told, he would have called in a neurologist. Both parties also presented the testimony of several expert witnesses who analyzed the treatment given to Troy in the emergency room. The jury returned a verdict finding the hospital negligent and awarding a total of $1,100,000 to the plaintiff. No negligence was found on the part of Dr. Goellner.
The parties have raised three main points on appeal. The first point deals with the the trial court's denial of the parties' motions for new trial based on the verdict's alleged inconsistency as well as the contention that the verdict was against the manifest weight of the evidence. Troy Brown and North Broward Hospital District both contend that the jury verdict finding liability against the hospital but none against the doctor makes no sense since the liability of the hospital clearly derived from the conduct of Dr. Goellner as agent for the hospital and as the person with primary responsibility for the treatment of Troy. Furthermore, they argue that since most of the evidence served to establish Dr. Goellner's negligence, the jury's finding liability on the part of the hospital alone was against the manifest weight of the evidence. Dr. Goellner and his employer, Haeck, Findeiss, Westmark & Creed, M.D., P.A. counter this argument by asserting that the jury verdict is wholly consistent with the evidence presented at trial and that by counsel's failure to bring the alleged inconsistency of the verdict to the court's attention prior to the discharge of the jury, they have waived their right to appellate review of this issue.
A review of the record herein indicates that the verdict was neither inconsistent nor against the manifest weight of the evidence. The expert witnesses all testified that the emergency room nurses and personnel had separate and distinct obligations to observe Troy Brown and report any difficulties with his motor abilities. It is entirely consistent with the evidence for the jury to have found that Troy showed no signs of paralysis at the time Dr. Goellner last examined him and approved his discharge. Although Troy's mother claimed to have told the doctor twice that Troy could not move his leg, Dr. Goellner testified that he was never given this information and that if he had been told, he would have called in a neurologist. Dr. Goellner further testified that he tested Troy's knees by squeezing them, that when he first examined him Troy could move his legs, that he did an examination of Troy's peripheral nerves, and that there was nothing wrong with the boy when he discharged him. Furthermore, Dr. Abramson, appellant's expert witness, admitted that if in fact the problem with Troy's leg was never communicated to Dr. Goellner, then he would have no criticism of Dr. Goellner's treatment of Troy. Thus, it could well be that Troy's paralysis occurred after the doctor's discharge order and the hospital staff's failure to detect the condition before or at the time they released him from the hospital and were transferring him from the bed to the wheelchair or from the wheelchair to his parents constituted independent negligence such as to support the jury's verdict. As a result, the trial court did not err in denying the motions for new trial.
Moreover, it appears, as asserted by appellees, that by failing to bring the inconsistent verdict to the trial court's attention prior to the discharge of the jury, appellant has waived his right to appellate review of this issue. E.g., Lindquist v. Covert, 279 So.2d 44 (Fla. 4th DCA 1973).
The second point on appeal  whether the trial court erred in finding the hospital was subject to the statutory limits of liability as set forth in section 768.28, Florida Statutes (1979) and in reducing the $1,100,000 verdict to the statutory limit of $100,000  has been answered by the Florida Supreme Court's recent decision in Eldred v. North Broward Hospital District, 498 So.2d 911 (Fla. 1986). There, the supreme court approved the decision of this court in North Broward Hospital District v. Eldred, 466 So.2d 1210 (Fla. 4th DCA 1985) and held, as we did there, that North Broward Hospital District, as a special taxing district, is included in the provisions of section 768.28(2) and is entitled to a limitation on the amount of damages recoverable *146 pursuant thereto. The supreme court's decision in Eldred is dispositive of this issue and, therefore, we affirm the trial court's decision limiting the damages to a total of $100,000 pursuant to section 768.28(5), Florida Statutes (1979).
The final point on appeal, raised by the hospital district, is whether the trial court erred in failing to direct a verdict in its favor since, even assuming negligence on its part, there was insufficient proof as to its causation of the injury. The hospital relies on Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla. 1984), for the holding that Florida courts follow the "more likely than not" standard of causation in negligence actions and requires proof that the negligence probably caused the plaintiff's injury. Appellant Brown, on the other hand, argues that causation was established since his expert witness established that prompt medical attention could have minimized the boy's injury.
The evidence as to the causation issue is conflicting. Although Troy's expert witness testified that with proper treatment Troy's "outcome would have been better," the testimony of the other expert witnesses established that there was nothing that could have been done at the time to prevent the paralysis and that Troy's condition was such that, once the patient manifests signs and symptoms of the problem, the condition is untreatable and before such symptoms appear, there is no way of knowing that the problem exists or is impending. As a result, we find that there was evidence supporting both parties' contentions and the jury had a right to weigh the evidence and could reasonably have concluded that but for the negligence of the hospital staff in detecting and treating the paralysis, appellant's injuries would have been much less severe. Since there was substantial evidence to support the jury's verdict in this regard, such verdict will be upheld by this court. Landry v. Hornstein, 462 So.2d 844 (Fla. 3d DCA 1985). We find no error by the trial court in denying the hospital's motions for directed verdict and for judgment in accordance with motion for directed verdict on this basis.
The parties have filed motions for attorney's fees pursuant to section 768.56, Florida Statutes (1981). However, this statutory section has been held to be inapplicable to causes of action accruing prior to July 1, 1980. In this case, the incident occurred on June 3, 1980. Therefore, since the cause of action herein accrued prior to the effective date of the statute, the statute is inapplicable and we must deny the motions for attorney's fees. See Young v. Altenhaus, 472 So.2d 1152 (Fla. 1985).
For these reasons, we affirm the final judgment and other orders appealed from in all respects.
DELL and STONE, JJ., concur.